## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**WALTER A. VAN PETEGHEM,**

     **Plaintiff,**

**v.**                                                    **Case No.  8:04-cv-1979-T-TBM**

**JO ANNE B. BARNHART,**
**Commissioner of the United States**
**Social Security Administration,**

     **Defendant.**

_____/

## O R D E R

     The Plaintiff seeks judicial review of the denial of his claims for Social Security

disability benefits and Supplemental Security Income payments.  For the reasons set out

herein, the decision is reversed and remanded for an award of benefits.

## I.

     Plaintiff was forty-one years of age at the time of his administrative hearing.

Plaintiff has a GED.  His past work experience was as a preschool aide, auto repairman and

service advisor, car salesman, lawn maintenance worker, and van driver.  Plaintiff applied for

disability benefits and Supplemental Security Income payments in November 2001,[1] alleging

disability as of October 22, 2001, by reason of low back pain, neck pain, nerves, depression,

and headaches.  The Plaintiff's applications were denied originally and on reconsideration.

---

[1]The protective filing date is October 22, 2001.  (R. 45).

The Plaintiff then received a *de novo* hearing before an Administrative Law Judge (hereinafter "ALJ").[2]  In essence, Plaintiff claimed that he could no longer work at any job because of back and neck pain, headaches, and depression.  He indicated he has constant pain in his neck and low back, spasms in his back, occasional "tingly" feelings and numbness in his right leg, and shooting pains that wake him up at night.  Plaintiff rated his back and neck pain as a nine on a scale of one to ten.  He testified that the medications he takes for pain cause stomach upset and diarrhea.  The diarrhea occurs every other day and lasts six to seven hours.  He testified further that the medications affect his ability to concentrate and stay focused.  Plaintiff attributes his back and neck problems to an injury he received in basic training and to a subsequent automobile accident [in 1996].  Plaintiff also suffers from headaches which occur daily.  On a bad day, Plaintiff said the headaches are an eight on a scale of one to ten and last between an hour to an hour and a half.  Plaintiff complained further about depression, for which he is prescribed Xanax.  He snaps at people, yells, and cries every other day for twenty or thirty minutes.

Plaintiff testified to limited daily activities.  According to Plaintiff, he needs help putting on his socks and shoes, taking off his shirt, and washing his back and his hair.  He can heat up food for himself, but his wife prepares the meals.  Plaintiff's wife and two daughters do all the housework, including laundry, and his wife does the yard work.  He occasionally goes grocery shopping but he is unable to help much.  Plaintiff spends six to seven hours a day reclining in his chair because it "helps a lot."  The rest of the day Plaintiff is up and down constantly, pacing, walking or just sitting there.  Additionally, Plaintiff works two hours a

---

[2]The transcript of the administrative hearing reflects a hearing date of March 10, 2002.  <u>See</u> (R. 271, 273).  However, it appears that the hearing was held March 10, 2003.  <u>See</u> (R. 9C, 13, 20-22).

2

day, five days a week, at a preschool and he has done so since December 2002.  Plaintiff is unable to sleep through the night because of the pain.[3]  See Plaintiff's testimony (R. 274-288).

Also before the ALJ were medical records outlining the Plaintiff's medical history.[4] These matters are addressed adequately by the parties' memoranda and are addressed herein as necessary.

By his decision of June 27, 2003, the ALJ determined that while Plaintiff has severe impairments related to low back pain and a mood disorder, he nonetheless had the residual functional capacity to perform light exertional work.  Upon this finding, the ALJ concluded that Plaintiff could perform his past relevant work as a new and used car salesman.  Upon this conclusion, the Plaintiff was determined to be not disabled.  (R. 13-19).  The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

II.

In order to be entitled to Social Security disability benefits and Supplemental Security Income payments, a claimant must be unable "to engage in any substantial gainful

---

[3]Plaintiff's attorney informed the ALJ that Plaintiff's wife was available to testify and that she would "basically corroborate" Plaintiff's testimony.  The ALJ stated that Plaintiff's testimony did not need additional support unless counsel felt is was not credible.  Counsel did not have Plaintiff's wife testify.  See (R. 288).

[4]The record on appeal also contains certain medical records that Plaintiff submitted to the Appeals Council but were not before the ALJ.  See (R. 7, 256-70).  Plaintiff, however, does not seek a sentence six remand for consideration of new evidence.  Accordingly, those records are not considered in determining whether the ALJ's decision is supported by substantial evidence.  See Falge v. Apfel, 150 F.3d 1320, 1322-23 (11th Cir. 1998) (providing that, while evidence presented for the first time to the Appeals Council is part of the record, only evidence presented to the ALJ will be considered in determining whether substantial evidence supports the ALJ's decision).

3

activity by reason of any medically determinable physical or mental impairment which . . .

has lasted or can be expected to last for a continuous period of not less than 12 months. . . ."

42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment," under the terms of the Act, is

one that "results from anatomical, physiological, or psychological abnormalities which are

demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  Id. at

§ 423(d)(3).

    A determination by the Commissioner that a claimant is not disabled must be upheld

if it is supported by substantial evidence and comports with applicable legal standards.  See

id. at § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971)

(quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Miles v. Chater, 84 F.3d

1397, 1400 (11th Cir. 1996).  The Commissioner must apply the correct law and demonstrate

that she has done so.  While the court reviews the Commissioner's decision with deference to

the factual findings, no such deference is given to the legal conclusions.  Keeton v. Dep't of

Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994) (citing Cornelius v. Sullivan,

936 F.2d 1143, 1145 (11th Cir. 1991)).

    It is, moreover, the function of the Commissioner, and not the courts, to resolve

conflicts in the evidence and to assess the credibility of the witnesses.  Grant v. Richardson,

445 F.2d 656 (5th Cir. 1971).  Similarly, it is the responsibility of the Commissioner to draw

inferences from the evidence, and those inferences are not to be overturned if they are

supported by substantial evidence.  Celebrezze v. O'Brient, 323 F.2d 989 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial

evidence, the court is not to re-weigh the evidence, but is limited to determining whether the

4

record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled.  Miles, 84 F.3d at 1400; Bloodsworth v. Heckler, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983).


III.

The Plaintiff raises four claims in his appeal.  As alleged by the Plaintiff, the ALJ erred with respect to:

(1)      Treating source evidence;

(2)      Credibility/combination of impairments;

(3)      Vocational expert [testimony]; and

(4)      Medication side effects.

Plaintiff's first claim involves the weight the ALJ accorded to the mental health limitations imposed by his treating psychologist, Robert Dies, Ph.D, and the work restrictions imposed by Craig W. Burns, M.D., a physician at the Helen Ellis Walk-In Clinic.[5]  (Doc. 11

---

[5]Plaintiff does not identify this doctor by name.  However, a photocopy of Dr. Burns' business card follows the records from Helen Ellis Walk-In Clinic.  (R. 215).  While the signatures on the treatment records and forms from this facility are mainly illegible, it appears they are those of Dr. Burns.

at 6-7).  Because the ALJ's assessment of Dr. Dies' opinions warrants reversal, it is the only issue the court addresses.[6]

The record reveals that Plaintiff was referred to Dr. Dies for a psychological evaluation in May 2002.  At that time, he diagnosed Plaintiff with a mood disorder and recommended counseling to learn strategies for coping with pain management and depression.  (R. 228-30).  During the six months following the evaluation, Plaintiff participated in three group therapy sessions with Dr. Dies and one individual counseling session.  By way of a treatment summary, Dr. Dies opined that Plaintiff's depression would not likely abate in light of his chronic pain and without intensive psychotherapy, and he indicated there was "little hope for employment of any kind."  (R. 232).  He also completed a Psychiatric Review Technique (hereinafter "PRT") form in which he reported that Plaintiff's depression met the requirements of listing 12.04, (R. 216, 219), and he completed a Mental Residual Functional Capacity Assessment form (hereinafter "mental "RFC") in which he indicated that Plaintiff suffered marked limitations in five areas and moderate limitations in twelve areas (R. 225-27).  In addressing Dr. Dies' records, the ALJ noted only that he evaluated Plaintiff in May 2002, diagnosed a mood disorder, and completed a mental RFC form in which he identified several marked mental limitations.  (R. 16-17).  Thereafter, the ALJ determined that Dr. Dies' opinion was entitled to "little weight."  The ALJ stated that Dr. Dies' conclusions were inconsistent with those of S. Rau Korabathina, M.D., and Steven N.

---

[6]Notably, while the ALJ may have had good cause to discount Dr. Burns' opinions, no treating or examining physician other than Dr. Burns specifically addressed Plaintiff's functional capacity, and the ALJ did not address the physical RFC opinions of the non-examining doctors.  It also is worth pointing out that at least one court has concluded that *intermittent* pain over a 12-month period may be sufficient to justify a conclusion of disability.  See Pettyjohn v. Sullivan, 784 F. Supp. 792, 794 (D. Colo. 1992).

Kanakis, Psy.D., both of whom evaluated Plaintiff on one occasion at the request of the

Division of Disability Determinations.  In particular, the ALJ explained:

> When the claimant was seen by Dr. Korabathina in January 2002, only four
> months prior to Dr. Dies' evaluation, he noted no evidence of depression.
> Even more revealing was the evaluation of psychologist Steven Kanakis
> who evaluated the claimant in June 2002, a month after Dr. Dies, and found
> that the claimant had late onset dysthymic disorder with no significant
> impairment in his ability to maintain attention or concentration, and no
> impairment in recent or remote memory.  Unlike Dr. Dies, Dr. Kanakis
> stated that the claimant's affect was normal, his level of energy was normal,
> there was no sign of any thought disorder and that the claimant exhibited no
> sign of distress.  The undersigned finds Dr. Kanakis' findings to be more
> consistent with the case record as a whole and, thus, does not find that the
> claimant has a mental impairment that would significantly impair the
> claimant's ability to function in a work-like setting.

(R. 17).

On this appeal, Plaintiff argues that the ALJ erred by crediting the opinions of

consulting doctors over that of Dr. Dies, a treating psychologist.  In response, the

Commissioner contends that Dr. Dies was not a treating source and the ALJ stated adequate

reasons for discounting his opinion.

The opinion of a treating physician is entitled to substantial weight unless good

cause is shown to the contrary.  Broughton v. Heckler, 776 F.2d 960, 961 (11th Cir. 1985);

see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  Good cause for rejecting a treating

source's opinion has been found when the opinion was not supported by the evidence, the

evidence supports a contrary finding, and/or the opinion was conclusory or inconsistent with

the doctor's own medical records.  Phillips v. Barnhart, 357 F.3d 1232, 1240-41 (11th Cir.

2004) (citing Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)).  In this circuit, where

the Commissioner has ignored or failed properly to refute the treating physician's testimony,

such testimony, as a matter of law, must be accepted as true. <u>MacGregor v. Bowen</u>, 786 F.2d 1050, 1053 (11th Cir. 1986).

Upon careful review of the record, the court is constrained to find that the ALJ failed to state adequate cause for rejecting Dr. Dies' opinions.[7]  As indicated above, the ALJ rejected Dr. Dies' opinions on the basis of two consulting sources.  As Plaintiff correctly points out, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  <u>See</u> <u>Wilson v. Heckler</u>, 734 F.2d 513, 518 (11th Cir. 1984); <u>see</u> <u>also</u> 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  More weight also is generally given to the opinion of specialist about an issue related to his area of speciality than to the opinion of a source who is not a specialist.  <u>See</u> 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5).  Here, Dr. Korabathina performed a one-time physical, not psychological, evaluation of Plaintiff.  That he noted in closing that Plaintiff was "not depressed but slightly anxious," <u>see</u> (R. 166), does not establish good cause for discounting the opinions of Dr. Dies.  With respect to Dr. Kanakis, he too evaluated Plaintiff only once.  In addition, his report reflects that he assessed Plaintiff's mental status by performing a clinical interview (R. 169), whereas Dr. Dies' assessments went beyond that of an interview (R. 228-32).  Furthermore, other than statements pertaining to Plaintiff's memory, concentration, insight, and orientation on that particular day, Dr. Kanakis did not evaluate Plaintiff's capacity to sustain certain mental

---

[7]As an initial matter, the court finds that Dr. Dies is a treating source under the Social Security Regulations, and is therefore entitled to consideration under this circuit's "treating physician" rule.  <u>See</u> 20 C.F.R. §§ 404.1502, 416.902 (defining treating source).  The Commissioner and the ALJ simply failed to recognize or acknowledge that Dr. Dies treated Plaintiff after the consultative evaluation.  Both also ignored that he completed the PRT and the mental RFC *after* treating Plaintiff on at least four occasions.

activities over a normal workday and workweek on an ongoing basis.[8]  For these reasons, I

am unable to find that the Commissioner has demonstrated the requisite good cause to

discount Dr. Dies' opinions.[9]  Because the court concludes that the ALJ ignored or failed to

adequately refute the treating psychologist testimony, such testimony, as a matter of law,

must be accepted as true.  See MacGregor, 786 F.2d at 1053.  When Dr. Dies' opinions

regarding Plaintiff's mental functional capacity are accepted as true, Plaintiff's disability is

established as of November 20, 2002.[10]  Thus, a remand for an award of benefits is

appropriate.[11]


IV.

For the foregoing reasons, the decision of the Commissioner of the United States

Social Security Administration is not supported by substantial evidence or is not in

accordance with the correct legal standards.  The decision is reversed and remanded for an

---

[8]Although not addressed, a non-examining state agency psychologist opined that Plaintiff had moderate limitations in his ability to carry out, remember, and understand detailed instructions; maintain attention and concentration for extended periods; accept instructions and respond appropriately to criticism from supervisors; and set realistic goals or make plans independent of others.  See (R. 172-74).  The ALJ's failure to address this opinion was error.  See Sharfarz, 825 F.2d at 279; MacGregor, 786 F.2d at 1053.

[9]It is perhaps reasonable to conclude that the difference in the opinions results from a worsening of Plaintiff's depression as Dr. Dies did not render his mental RFC assessment until November 20, 2002.

[10]While vocational expert testimony typically is required to establish there is no work in the national economy which a claimant with mental limitations can perform, the court finds a remand for such testimony is not warranted in light of the seventeen moderate and marked limitations identified by Dr. Dies and his opinion that Plaintiff's impairment met the listing requirements for affective disorders.

[11]In light of this ruling, Plaintiff's other contentions need not be addressed.

9

award of benefits consistent with this Order.  Accordingly, the  Clerk is directed to enter

Judgment in favor of the Plaintiff and to close the file, and the matter of fees and costs shall

be addressed upon further pleadings.

      **Done and Ordered** at Tampa, Florida, this 20th day of December 2005.

                           THOMAS B. McCOUN III
                           UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record